UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ELI VIGIL CLAROS,

               Petitioner,

    v.

JESSICA SAGE, MICHAEL T. ROSE,
KRISTI NOEM, and PAMELA BONDI,

               Respondents.

CIVIL ACTION NO. 3:26-CV-00204

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Eli Vigil Claros ("Claros"), a citizen of El Salvador seeking asylum in the United States, brings this petition for writ of habeas corpus. (Doc. 1). On January 28, 2026, Claros filed the instant petition, requesting that Respondents Jessica Sage ("Sage"), Michael T. Rose, Kristi Noem, and Pamela Bondi[1] release him from custody at the Lewisburg Federal Correctional Institution or provide him with an individualized bond hearing. (Doc. 1). For the following reasons, Claros's petition (Doc. 1) is **GRANTED**, and Sage is **ORDERED** to

---

[1] The government asserts that pursuant to the "immediate custodian rule," the only proper respondent in this case is Jessica Sage ("Sage"), Warden of the Lewisburg Federal Correctional Institution. (Doc. 5, at 1 n.1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Claros is detained at the Lewisburg Federal Correctional Institution, Sage is the proper Respondent. (Doc. 1, at 4); *see Rumsfeld*, 542 U.S. at 434. As such, the other Respondents are **DISMISSED**. However, the government will be bound by the Court's judgment because Sage is acting as an agent of the federal government by detaining Claros on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton County Correctional Facility*, 3:25-cv-01896, 2025 U.S. Dist. LEXIS 252280, at *22 (M.D. Pa. Nov. 13, 2025) (finding same).

release Claros from custody.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

The following background and factual summary are derived from Claros's petition and the exhibits thereto. (Doc. 1). Claros is a citizen of El Salvador who has lived in Suffolk County, New York, near his sister and her children, for about eight years. (Doc. 1, at 12). On August 14, 2018, Claros entered the United States without inspection after fleeing El Salvador. (Doc. 1, at 12). Claros passed a credible fear interview and was issued a notice to appear for proceedings in immigration court. (Doc. 1, at 12). When Claros appeared in immigration court on August 23, 2019, he was detained by ICE because police in El Salvador had issued an arrest warrant and Interpol Red Notice alleging Claros was a gang member. (Doc. 1, at 12). In late 2020, Claros was fully heard on the merits of his application for asylum, and, while denying relief on unrelated issues, the immigration judge found that the arrest warrant and Interpol Red Notice were based on false allegations of gang membership. (Doc. 1, at 13). Claros then appealed the merits of the asylum decision and sought a custody redetermination in light of the immigration judge's finding that the allegations of gang membership were false. (Doc. 1, at 13). On December 1, 2020, an immigration judge found that Claros was not a danger nor a flight risk and released him from custody during his appeal. (Doc. 1, at 13).

On September 4, 2025, Claros was stopped by the police while driving in Suffolk County, New York. (Doc. 1, at 13). After questioning unrelated to the traffic stop, Claros was taken to the precinct and collected by ICE. (Doc. 1, at 13-14). Claros was not provided with a reason for his re-detention; however, the parties agree that Claros was re-detained pursuant to 8 U.S.C. § 1225(b)(2). (Doc. 1, at 14, 21-22; Doc. 5, at 18). Claros was transferred from a

processing facility in Central Islip to the Nassau County Jail, then to the Moshannon Valley Processing Center, and finally to the Lewisburg Federal Corrections Institution, where he has remained detained for just over five months. (Doc. 1, at 14).

Claros filed the instant petition for writ of habeas corpus on January 28, 2026. (Doc. 1). Pursuant to the Court's Order to Show Cause (Doc. 2), the government filed a response to Claros's petition on February 4, 2026. (Doc. 5). Claros filed a reply to the government's response on February 12, 2026. (Doc. 6). Accordingly, the petition is ripe for disposition.

## II.   LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J.G.G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing if the Court determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a

noncitizen habeas petitioner was entitled to a bond hearing under the Due Process Clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Niell*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

### III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States. . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, at 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later, on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal,

the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *5 (E.D. Pa. Nov. 14, 2025) (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings; they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction because the legal questions of whether § 1225(b) or § 1226(a) applies to Claros and whether Claros is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-77.

## IV.   VENUE

Claros submits that the proper venue is either the Eastern or Southern District of New York, where his counsel is located. (Doc. 1, at 14). Claros bases this assertion on a permanent injunction from a 1982 class action case in the Central District of California, in which the court found that venue should remain in the district where the class members' counsel are located. (Doc. 1, at 14); *see Orantes-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Ca. 1982). Generally, jurisdiction for habeas petitions lies only in the district of confinement, where the

respondent is the petitioner's immediate custodian. *Rumsfeld*, 542 U.S. at 436, 443-44. Additionally, "the requirement to file in the district of confinement concerns venue, not subject-matter jurisdiction." *Khalil*, 164 F.4th at 273 (quoting *Dufur v. U.S. Parole Comm'n*, 34 F.4th 1090, 1096-97 (D.C. Cir. 2022)). Accordingly, venue is proper in the Middle District of Pennsylvania, where Claros is detained.

## V.    DISCUSSION

Claros contends that his mandatory detention under § 1225(b) is a violation of the Immigration and Nationality Act ("INA"); Immigration and Naturalization Service ("INS") bond regulations 8 C.F.R. §§ 236.1, 1236.1, and 1003.13; the Administrative Procedure Act; and the Due Process Clause of the Fifth Amendment. (Doc. 1, at 21-25). Claros reasons that § 1225(b) does not apply to individuals, like Claros, who previously entered the country and resided in the United States prior to being apprehended by ICE. (Doc. 1, at 21-22). Claros further avers that the application of § 1225(b) to Claros violates INS guidance; is arbitrary, capricious, and not in accordance with the law; and deprives him of his liberty without due process of law. (Doc. 1, at 23-25). The government contends that Claros is, by law, an applicant for admission who is subject to mandatory detention under § 1225(b). (Doc. 5, at 2). The government also asserts that the only due process afforded to applicants for admission, like Claros, is that which is provided by the INA. (Doc. 5, at 4). The Court will first address whether Claros was properly detained under § 1225(b). Then the Court will determine whether Claros's detention under § 1225(b) violates due process.[2]

---

[2] As the Court grants the Petition on the basis that Claros's detention is unlawful under the INA and violates his procedural due process rights, the Court declines to consider Claros's bond regulation and Administrative Procedure Act arguments at this time. *See Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *9 n. 6 (D.N.J. Oct. 22, 2025); *see Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *5 (E.D. Pa. Nov. 18, 2025); *see*

A. CLAROS WAS IMPROPERLY DETAINED UNDER 8 U.S.C. 1225(B)(2)(A), WHEN HE SHOULD HAVE BEEN DETAINED UNDER 8 U.S.C. § 1226(A).

Claros was improperly detained under 8 U.S.C. 1225(b)(2)(A), when he should have been detained under 8 U.S.C. § 1226(a). Claros avers that noncitizens who previously entered the country and resided in the United States prior to being apprehended by ICE are properly detained under § 1226(a), not § 1225(b)(2)(A). (Doc. 1, at 21-22). The government counters that Claros is properly classified as an "applicant for admission" and falls squarely within the statutory definition of noncitizens subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A), under which he is ineligible for release on bond. (Doc. 5, at 18-19).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, and they may be released only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. Two recent BIA decisions eliminated the availability of bond hearings under

---

*Kashranov*, 2025 WL 3188399, at *8; *see also* *Ramirez v. Jamison*, No. 2:25-cv-7346, 2026 WL 196474, at *19 (E.D. Pa. Jan. 26, 2026).

§ 1225(b)(2)(A). In *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), the BIA held an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and is subsequently placed in removal proceedings, is detained under § 1225 and is ineligible for any subsequent release on bond. In *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025), the BIA held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for bond hearings.

To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to an alien who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *5 (D.N.J. Oct. 22, 2025) (collecting cases).

Section 1225(a)(1) defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid v.*

*Bondi*, No. 3:25-cv-00304, 2025 WL 2985150, at \*16 n.7 (W.D. Pa. Oct. 23, 2025); *J.A.M.*, 2025 WL 3050094, at \*3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at \*6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at \*2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at \*13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 2025 WL 2976572, at \*6. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[3] *Kashranov*, 2025 WL 3188399, at \*6.

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Certain noncitizens, who are already in the country, can be detained pending the outcome of their removal proceedings under § 1226(a). *Jennings*, 583 U.S. at 288-89. Section 1226(a) "[a]pplies to aliens already present in the United States" and "creates a default rule for those aliens by permitting – but not requiring – the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2021 WL 3171639, at \*1 (E.D. Pa. Nov. 13, 2025) (citing *Jennings*, 583 U.S. at 303). Under § 1226(a), the Attorney General may release a noncitizen on bond or

---

[3] The Court acknowledges that the Fifth Circuit recently issued a decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at \*5 (5th Cir. 2026), holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* is not binding on the Court, and the Court declines to follow it here.

conditional parole. 8 U.S.C. § 1226(a)(2). "Immigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At a bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice ("DOJ") announced a new policy, which provides that all persons who entered the United States without inspection, regardless of when the person is apprehended, shall now be subject to mandatory detention provision under § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Feb. 13, 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2021 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov*, 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"); *Del Cid v. Bondi*, No. 3:25-cv-00304, 2025 WL 2985150, at *14-17 (W.D. Pa. Oct. 23, 2025) (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto*, 2025 WL 2976572 at *7 (collecting cases).

8 U.S.C. § 1226(a), not § 1225(b)(2)(A), applies to Claros's detention. Claros has already resided in the United States for eight years. (Doc. 1, at 1). Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. Claros is not actively attempting to come into the United States at a border or port of entry. Based on the plain meaning of the phrase "seeking admission," Claros sought admission eight years ago when he entered the United States on August 14, 2018. (Doc. 1, at 6); *see Kashranov,* 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). Instead, § 1226(a) applies to individuals, like Claros, who have been residing in the United States for an extended period of time. *Cantu-Cortes,* 2021 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here").

B. Claros's Due Process Rights Were Violated When He Was Improperly Subjected to Mandatory Detention.

Claros's continued mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights. Claros avers that the government's detention of him without a bond hearing, despite an immigration judge's previous determination that Claros is not a flight risk or danger to the community, violates his right to due process. (Doc. 1, at 25). The government counters that Claros's detention does not violate due process because there is a definite termination point to his detention, the length of his removal proceedings. (Doc. 5, at 37-38).

11

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews,* 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Claros's favor because Sage has deprived Claros of his physical liberty through improper detention without the possibility of bond under § 1225(b)(2)(A). *Hamdi v. Rumsfield,* 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas,* 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects; *Soto,* 2025 WL 2976572, at *8. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Claros's favor because Claros remains erroneously detained without the possibility of release on bond pursuant to § 1225(b)(2)(A). *See Soto,* 2025 WL 2976572, at *8 (citing *Barrios v. Shepley,* No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi,* No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to

12

erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Claros's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 2025 WL 2976572, at *8. Claros poses no such risk to the government's interest in detaining him. An immigration judge has already determined that Claros is neither a flight risk nor a danger to the community. (Doc. 1-7, at 5-6). As each *Mathews* factor weighs in Claros's favor, his mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights. Accordingly, Claros's petition for writ of habeas corpus is **GRANTED**, and Sage is **ORDERED** to release Claros from custody.[4]

## VI.    CONCLUSION

For the foregoing reasons, Claros's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). The Court **ORDERS** Sage to release Claros from custody. The Court also permanently enjoins Sage from re-detaining Claros under § 1225(b)(2)(A). Claros may move

---

[4] The Court notes that Claros also seeks relief in the form of attorney's fees and costs under the Equal Access to Justice Act. (Doc. 1, at 26). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016). (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025). (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Claros must request attorney's fees in a separate motion with accompanying exhibits.

to reopen this matter if Sage seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing.

An appropriate Order follows.

**BY THE COURT:**

**Dated: February 25, 2026**                    */s/ Karoline Mehalchick*
                                      **KAROLINE MEHALCHICK**
                                      **United States District Judge**