**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELI VIGIL CLAROS,<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>JESSICA SAGE, et al.,<br><br>　　　　　　Respondents. | CIVIL ACTION NO. 3:26-CV-00204<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Petitioner, Eli Vigil Claros ("Claros"), a citizen of El Salvador seeking asylum in the United States, brings this motion to enforce. (Doc. 9). For the following reasons, Claros's motion to enforce (Doc. 9) is **GRANTED**.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

Claros is a citizen of El Salvador who has lived in Suffolk County, New York, near his sister and her children, for about eight years. (Doc. 1, at 12). On August 14, 2018, Claros entered the United States without inspection after fleeing El Salvador. (Doc. 1, at 12). Claros passed a credible fear interview and was issued a notice to appear for proceedings in immigration court. (Doc. 1, at 12). When Claros appeared in immigration court on August 23, 2019, he was detained by ICE. (Doc. 1, at 12). On December 21, 2020, an immigration judge found that Claros is not a danger to the public nor a flight risk and released him from custody during his asylum appeal. (Doc. 1, at 13). Claros's bond was secured by a payment of $12,500, which the government still holds. (Doc. 9, at 5, Doc. 1-6).

On September 4, 2025, ICE took Claros back into immigration detention following a traffic stop. (Doc. 1, at 13-14). On January 28, 2026, Claros filed a petition for writ of habeas corpus, requesting release from custody because ICE improperly detained him under 8 U.S.C.

§ 1225(b)(2)(A). (Doc. 1). The Court granted Claros's petition on February 25, 2026, ordering Respondent Jessica Sage ("Sage") to release Claros from custody. (Doc. 8). On March 15, 2026, Claros filed a motion to enforce the Court's February 25 order, informing the Court that ICE released Claros from custody on an Intensive Supervision Appearance Program ("ISAP"), which requires Claros to wear a GPS ankle monitor and make frequent appearances at various ICE field offices. (Doc. 9, at 2). The government filed a response to Claros's motion to enforce on March 20, 2026. (Doc. 12). Accordingly, Claros's motion is ripe for disposition.

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J.G.G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing if the Court determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory

2

protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the Due Process Clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

### III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States. . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). However, "the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody." *Jones v. Cunningham*, 371 U.S. 236, 239 (1963). Petitioners with other restraints to liberty, "restraints not shared by the public generally," can also be considered in custody for the purposes of a writ of habeas corpus. *Jones*, 371 U.S. at 240; *Kegel v. Rose*, 26-1213, 2026 WL 1018335, at *3 (E.D. Pa. April 15, 2026). For a petitioner to be in custody, the restrains on the petitioner must be "(1) severe, (2) immediate (i.e., not speculative), and (3) not shared by the public generally." *United States v. Ross*, 801 F.3d 374, 379 (3d Cir. 2015). Several district courts in the Third Circuit and across the country have found that the conditions of an ISAP constitute being in custody for the purposes of a writ of habeas corpus. *Kegel*, 2026 WL 1018335, at *4-*5 (collecting cases); *da Silva v. LaForge*, No.

3

25-cv-17095, 2026 WL 45165, at *2-*3 (D.N.J. Jan. 7, 2026); *Diahn v. Lowe*, 1:24-cv-1936, 2026 WL 84576, at *3 (M.D. Pa. Jan. 12, 2026).

Claros's ISAP conditions include GPS ankle monitoring and frequent mandatory appearances at various ICE field offices. (Doc. 9, at 2; Doc. 9-2). Claros's ISAP conditions are severe because they are a form of supervised parole that significantly restrain his daily movements and activities and subject Claros to continuous surveillance. (Doc. 9, at 6); *see da Silva*, 2026 WL 45165, at *2-*3 (collecting cases); *see Kegel*, 2026 WL 1018335, at *5; *see Diahn*, 2026 WL 84576, at *3; *see also Khabazha v. United States Immigr. & Customs Enf't.*, No. 25-cv-5279, 2025 WL 3281514, at *3 (S.D.N.Y. Nov. 25, 2025) (finding a petitioner released from ICE custody who was required to wear an ankle monitor and check in at regular intervals was in custody for the purposes of his habeas petition). Claros's ISAP conditions are immediate because he is currently subject to the conditions and has been since his release from physical detention. (Doc. 9, at 2); *see da Silva*, 2026 WL 45165, at *2-*3; *see Kegel*, 2026 WL 1018335, at *5. Claros's ISAP conditions are also not shared by the public generally. *see da Silva*, 2026 WL 45165, at *2-*3; *see Kegel*, 2026 WL 1018335, at *5. Accordingly, Claros is in custody for the purposes of his habeas action, and the Court has jurisdiction pursuant to 28 U.S.C. § 2241. *See Ross*, 801 F.3d at 379; *see da Silva*, 2026 WL 45165, at *2-*3 (collecting cases); *see Kegel*, 2026 WL 1018335, at *5; *see Diahn*, 2026 WL 84576, at *3.

## IV. DISCUSSION

Claros contends that the additional conditions of his release imposed by ICE go beyond his 2020 bond order and thus violate both the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. (Doc. 9, at 4). Claros reasons that the Court's determination that he cannot be detained under 8 U.S.C. § 1225(b)(2)(a),

restored Claros to the status quo before his September 2025 arrest and detention, when he was on release pursuant to his 2020 bond order. (Doc. 9, at 4). The government counters that no statute or regulation prevents ICE from adding conditions of release after an immigration judge issues a bond. (Doc. 12, at 5). The government also avers that Claros's due process rights are protected because Claros can ask an immigration judge to review the additional conditions of release set by ICE. (Doc. 12, at 4). The Court will first evaluate whether the government violated the INA and ICE's regulations. The Court will then determine whether the government violated Claros's due process rights.

A. ICE Does Not Have Authority To Impose Additional Conditions on Claros's Release.

Section 1226 of the INA provides for the apprehension and detention of noncitizens pending removal proceedings. 8 U.S.C. § 1226(a). The statute also gives the Attorney General the choice to either continue detaining the arrested noncitizen during removal proceedings or to "release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General." 8 U.S.C. § 1226(a)(1), (2); *Kegel*, 2026 WL 1018335, at *6. After an initial custody determination by the Attorney General or ICE, a noncitizen can request "amelioration of the conditions under which he or she may be released" in an application to an immigration judge. 8 C.F.R. § 1236.1(d)(1). Upon receiving such an application, an immigration judge has the power to "detain the alien in custody, release the alien, and determine the amount of bond." 8 C.F.R. § 1236.1(d)(1). If dissatisfied with the immigration judge's custody determination, either the government or the noncitizen may appeal the immigration judge's decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1236.1(d)(3); § 1003.19(f). A noncitizen detainee may also request a subsequent

bond redetermination upon a showing that their "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

"This regulatory framework is sequential and must be read together to avoid surplusage." *N-N- v. McShane*, 813 F. Supp. 3d 496, 500 (E.D. Pa. 2025). Accordingly, after the Attorney General or ICE makes the initial custody determination under § 1226(a), only an immigration judge or the BIA may review and redetermine custody. *N-N-*, 813 F. Supp. 3d at 500 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 527-28 (2021)); 8 U.S.C. § 1226(a)(1), (2); 8 C.F.R. § 1236.1(d)(1), (3); § 1003.19(f), (e). If a Court permitted ICE to "impose additional conditions *after* an immigration judge has ordered release and set conditions," it would render the administrative adjudicatory process null. *N-N-*, 813 F. Supp. 3d at 500; *da Silva*, 2026 WL 45165, at *4 ("ICE violated its own regulations when, instead of appealing the Immigration Court's Order to the BIA . . ., it imposed additional restrictions on Petitioner's supervised release"); *Kegal*, 2026 WL 1018335, at *8 ("ICE could have imposed these conditions as part of its initial custody determination after arresting [petitioner] or argued for these conditions . . . during [petitioner's] appeal. But ICE cannot sidestep the process to unilaterally impose new terms of release."). *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 69 (D. Mass. 2025) ("To take the Respondents' position as true would be to render the AG's delegation to an IJ meaningless, and would defeat the purpose of having a knowledgeable, neutral third party review the appropriateness of a noncitizen's detention.")

ICE does not have the authority to impose additional conditions on Claros's release beyond the immigration judge's 2020 bond order. When the Court granted Claros's habeas petition and ordered Sage to release Claros from custody, it restored Claros to his previous conditions of release as dictated by the immigration judge's 2020 bond order. (*See* Doc. 7; *see*

Doc. 8). According to ICE's own regulations, ICE can only seek review of Claros's conditions of release set by the immigration judge via the BIA. 8 U.S.C. § 1226(a)(1), (2); 8 C.F.R. § 1236.1(d)(1), (3); *see N-N-*, 813 F. Supp. 3d at 500; *see da Silva*, 2026 WL 45165, at *4; *see Kegal*, 2026 WL 1018335, at *8; *see also Orellana Juarez*, 788 F. Supp. 3d at 69. The Court cannot allow ICE to impose additional conditions on Claros's release because to do so would render the existing administrative process superfluous. *N-N-*, 813 F. Supp. 3d at 500; *da Silva*, 2026 WL 45165, at *4; *Kegal*, 2026 WL 1018335, at *8.

> B. ICE's Additional Conditions of Release Violate the *Accardi* Doctrine and Claros's Due Process Rights.

The *Accardi* doctrine provides that federal agencies must "follow their own binding regulations and formally established procedures, even if those procedures provide greater rights than required by statute." *N-N-*, 813 F. Supp. 3d at 502 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Once an agency, such as ICE, promulgates rules, it must adhere to them to ensure a fair administrative process. *N-N-*, 813 F. Supp. 3d at 502. An agency's failure to comply with its own rules that protect fundamental statutory or constitutional rights merits "invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced the complaining party." *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010); *Kegel*, 2026 WL 1018335, at *9; *N-N-*, 813 F. Supp. 3d at 502 (citing *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1973)). District courts may invalidate agency actions in violation of the *Accardi* doctrine, when presented in a petition for writ of habeas corpus. *N-N-*, 813 F. Supp. 3d at 502 (citing *Accardi*, 347 U.S. at 268; *Chong v. Distr. Dir., I.N.S.*, 264 F.3d 378, 389-90 (3d Cir. 2001)).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the

Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

By imposing additional conditions on Claros's release, ICE violated 8 C.F.R. § 1236.1(d), a regulation that protects Claros's Fifth Amendment due process rights. *Kegal*, 2026 WL 1018335, at *9 (citing *Zadvydas*, 533 U.S. at 693); *N-N-*, 813 F. Supp. 3d at 502 (finding ICE's imposition of additional release conditions bears heavily on [petitioner's] procedural rights and individual liberties). Therefore, under the *Accardi* doctrine, ICE's imposition of additional conditions on Claros's release must be vacated, regardless of whether Claros can demonstrate substantial prejudice. *See Kegel*, 2026 WL 1018335, at *9; *N-N-*, 813 F. Supp. 3d at 502.

ICE's disregard of 8 C.F.R. § 1236.1(d) also violates Claros's due process rights according to the *Mathews* balancing test. The first prong, private interest implicated by the government action, weights in Claros's favor because Claros's freedom from constant and continuous government surveillance is implicated by the government's additional conditions of release. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty"); *see N-N-*, 813 F. Supp. 3d at 502 ("[petitioner's] ankle monitor, removable solely at the discretion

of ICE, violates Due Process."). Claros submits that the GPS ankle monitoring has significantly interfered with his quality of life. (Doc. 9, at 7). The second prong, risk of erroneous deprivation of liberty, also favors Claros because ICE imposed constraints on his release that go beyond the conditions set by the immigration judge, adding restrictions to Claros's liberty without legal authority. (Doc. 9, at 2); *see N-N-*, 813 F. Supp. 3d at 502 (finding additional conditions imposed solely at the discretion of ICE implicates the issue of indefinite detention and raises serious due process concerns). ICE's additional constraints were added without an individualized assessment of Claros's risk of flight or danger to the public before a neutral decision maker. (Doc. 9, at 2); *see Orellana*, 788 F. Supp. 3d at 69 (determining that allowing ICE to impose additional conditions would "defeat the purpose of having a knowledgeable, neutral third party review the appropriateness of a noncitizen's detention"). The third prong, the government's interest, likewise weighs in favor of Claros because an immigration judge previously determined that Claros is not a flight risk or danger to the public. (Doc. 1-6; Doc. 1-7; Doc. 1-8), *see Zadvydas*, 533 U.S. at 690 (finding the purpose of immigration detention is ensuring a noncitizen's appearance and protecting the public from dangerous noncitizens). Therefore, ICE's imposition of additional conditions on Claros's release violates both the *Accardi* doctrine and the Due Process Clause of the Fifth Amendment. Accordingly, Claros's motion to enforce is **GRANTED**. (Doc. 9). Sage is **ORDERED** to remove Claros's GPS ankle monitor and restore Claros to the conditions of release provided by the immigration judge on December 21, 2020. (Doc. 1-6).

V.    CONCLUSION

For the foregoing reasons, Claros's motion to enforce is **GRANTED**. (Doc. 9). The Court **ORDERS** Sage to remove Claros's GPS ankle monitor and restore Claros to the

conditions of release provided by the immigration judge on December 21, 2020. (Doc. 1-6).

The Clerk of Court is directed to close this matter. An appropriate Order follows.

**BY THE COURT:**

**Dated: July 6, 2026**                    */s/ Karoline Mehalchick*
                                          **KAROLINE MEHALCHICK**
                                          **United States District Judge**